UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
PEARSON EDUCATION, INC., ET AL.,      :

              Plaintiffs,      :

    -against-      :

MARTHA VERGARA d/b/a TESTBANK      :
GURU d/b/a TEST BANK ZONE, ET AL.,

                      :

              Defendants.
------------------------------------------------X

REPORT and RECOMMENDATION

09 Civ. 6832 (JGK)(KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

On August 3, 2009, the plaintiffs – Pearson Education, Inc. ("Pearson"), John Wiley & Sons, Inc. ("Wiley"), Cengage Learning Inc. ("Cengage"), and The McGraw-Hill Companies, Inc. ("McGraw-Hill") – initiated the instant copyright infringement action against Martha Vergara d/b/a Testbank Guru d/b/a Test Bank Zone ("Vergara"), and five John Doe defendants. On December 21, 2009, your Honor entered judgment by default against Vergara, owing to her failure to appear in the action, and referred the case to the undersigned for an inquest on damages.

## BACKGROUND

As a party's default is deemed a concession of all well-pleaded factual allegations, the Court accepts the following as true.

Pearson is a Delaware corporation, with its principal place of business in New Jersey. Wiley is a New York corporation, with its principal place of business in New Jersey. Cengage is a Delaware corporation, with its principal place of business in Connecticut. McGraw-Hill is a New

1

York corporation, with its principal place of business in New York.

The plaintiffs publish college textbooks and instructors' solutions manuals ("ISMs"). ISMs are supplementary resources professors use to aid them in grading student homework. Professors are less likely to select a textbook if its accompanying ISM is widely available, since students can use it to cheat. To address this, the plaintiffs do not sell their ISMs, rather, they "tightly control their distribution to known faculty."

Pearson has registered and received United States Certificates of Copyright Registration for the 11 works identified in Schedule A to the complaint. Wiley has registered and retrieved certificates for the 15 works in Schedule B; Cengage has done the same for the 8 works in Schedule C, and McGraw-Hill, for the 8 works in Schedule D.

Vergara "is a natural person presently residing" in Florida. Without the plaintiffs' permission, Vergara has "reproduced and sold copies of the plaintiffs' [ISMs] through online sales at websites and forums, including but not limited to Testbankzone.com, Topix.com. Google Groups, e-Junkie.com, YouTube.com, and Craigslist.com, using usernames including, but not limited to, zethersss@aim.com, testbankguru@gmail.com, and zer0ness@aim.com."

The plaintiffs seek injunctive relief and $33,680 in damages, representing $30,750 in statutory damages and $2,930 in costs, including attorney's fees.

## DISCUSSION

**I. Liability**

To prevail on a copyright infringement claim, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns v. Rural Tele. Serv., 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991). The word "copying" in the second element "is shorthand for the infringing of any of the copyright

owner's five exclusive rights described in [17 U.S.C.] § 106." Arista Records LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010) (internal quotation marks and citation omitted).

"A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003) (citing 17 U.S.C. § 410[c]). The defendant bears the burden of proving the invalidity of a registered copyright. Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 109 (2d Cir. 2001). The plaintiffs have registered and received registration certificates for the 42 works listed in Schedules A through D to the complaint, thereby creating a statutory presumption that they own valid copyrights in these works. With no challenge to the validity of the copyrights, the plaintiffs have established their ownership.

To establish the second element of an infringement claim, "the copyright owner must demonstrate that '(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.'" Id. at 110 (emphasis and citation omitted). "Actual copying may be established by direct or indirect evidence." Boisson v. Banian, Ltd., 273 F.3d 262, 267 (2d Cir. 2001).

The plaintiffs allege Vergara infringed the 42 works listed in Schedules A through D to the complaint, by reproducing and selling copies of their ISMs, through the Internet. Specifically, in July 2009, Vergara sold unauthorized copies of the plaintiffs' ISMs to a paralegal at the plaintiffs' counsel's law firm, using the online payment system, PayPal, Inc. Decl. of Laura Scileppi ("Scileppi Decl.") ¶ 11. Vergara sent the paralegal e-mail messages containing .pdf files of four ISMs, in exchange for payment. Id. Of the four ISMs, only two appear as registered copyrights, in the schedules appended to the complaint. The plaintiffs have not alleged the remaining two ISMs are

3

registered with the Copyright Office. As to these works, the plaintiffs contend Vergara infringed registered copyrights in their textbooks, by reproducing and selling, without authorization, their ISMs, which constitute derivative works. Hence, it appears the plaintiffs must establish Vergara's liability as to two sets of copyrights: (1) the registered ISMs; and (2) the registered textbooks.

The plaintiffs have established copyright infringement, with respect to the registered ISMs. The allegations, taken as true, demonstrate that the plaintiffs have registered copyrights in several ISMs, which they do not sell, but distribute to known faculty members. Vergara has reproduced and sold these ISMs online, without authorization. The plaintiffs provided direct evidence of Vergara selling some of their ISMs in electronic format, by providing the Court with bills from PayPal, Inc., memorializing the sales.

The plaintiffs contend their unregistered ISMs are derivative works of their registered textbooks. Pursuant to the Copyright Act, a derivative work is "a work based upon one or more preexisting works[.]" See 17 U.S.C. § 101. Derivative works may receive copyright protection, but protection extends only to the newly contributed material, not to any preexisting material utilized. See 17 U.S.C. § 103. "A derivative work is copyrightable if it is sufficiently original . . . . This has been interpreted to require a distinguishable variation that is more than merely trivial." Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, 782 (2d Cir. 1994). The threshold for establishing the originality of a purported derivative work is low, id., and whether this threshold has been met is a question of fact. See Matthew Bender & Co., Inc. v. West Publ'g Co., 158 F.3d 674, 681 (2d Cir. 1998), cert. denied, 526 U.S. 1154, 119 S. Ct. 2039 (1999).

The Court finds that the plaintiffs' ISMs, which provide professors solutions to aid them in grading homework assignments from the plaintiffs' textbooks, are derivative works,

warranting copyright protection.  See Pearson Educ., Inc. v. Nugroho, No. 08 Civ. 8034, 2009 WL 4884098, at *1 (S.D.N.Y. Dec. 16, 2009)(adopting report and recommendation concluding that solutions manuals were derivative works of copyrighted college textbooks); see also Addison-Wesley Publ'g Co. v. Brown, 223 F. Supp. 219, 228 (E.D.N.Y. 1963) (finding infringement where defendants published solutions manual to accompany plaintiffs' copyrighted college textbooks).  Although the ISMs may not be registered copyrights, "[g]iven that a derivative work by definition consists of matter that would be infringing if it had been derived from the pre-existing work without the copyright proprieter's consent[], it follows analytically that the owner of a registered underlying work, in that capacity alone, should be able to maintain" a suit for unauthorized reproduction of an unregistered derivative work.  2-7 NIMMER ON COPYRIGHT § 7.16[B][5][b].  Hence, by reproducing and selling unauthorized copies of the plaintiffs' ISMs, Vergara infringed, at least, the plaintiffs' exclusive right to prepare derivative works to their registered textbooks.  See 17 U.S.C.A. § 106(2).

**II. Damages**

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080, 113 S. Ct. 1049 (1993).  Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  See Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007) (holding damages arising from a default judgment be limited to those specified in the "demand clause" of the complaint).  A district court need not conduct a hearing in order to determine the amount of damages to award after a judgment by default, but

may instead evaluate the fairness of a proposed damages award by relying on affidavits and documentary evidence. See Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993); Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

The plaintiffs have elected to forego actual damages and recover statutory damages instead, as 17 U.S.C. § 504(c)(1) permits them to do "at any time before final judgment is rendered[.]"[1] The plaintiffs seek the minimum statutory damages award: $750 per infringed work. See 17 U.S.C. § 504(c)(1). In their inquest submission, the plaintiffs identify only 41 infringed works, although they identified 42 in their complaint.[2] The Court is unclear whether this omission results from careless error or whether the plaintiffs intended to abandon their damages claim for this work. In the interest of prudence, the Court will only assess the minimum statutory damages, $750, for 41 works. The Court finds a statutory damages award of $30,750 is appropriate in this action.

**III. Permanent Injunction**

The Copyright Act provides that a district court may grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). An injunction does not "automatically follow[] a determination that a copyright has been

---

[1] Pursuant to 17 U.S.C. § 412, a copyright owner may not recover statutory damages or attorney's fees where the alleged infringement commenced after first publication of the work, but before registration thereof, unless the work is registered within three months after publication. Of the 42 works listed in Schedules A through D to the complaint, the most recent registration date is January 7, 2009. The earliest date on which Vergara is known to have advertised sale of the copyrighted works is June 22, 2009. Scileppi Decl. ¶ 13. There is no evidence to contradict the inference that the copyrights at issue were registered before Vergara's infringement. Hence, awarding statutory damages and attorney's fees would not be improper.

[2] Specifically, the plaintiffs omitted, from their inquest submission, the following work from Schedule B: Fundamentals of Physics: Instructor's Solutions Manual Volume 2, Seventh Edition (January 21, 2005) (TX-6-101-286).

infringed." eBay Inc. v. MercExchange, LLC, 547 U.S. 338, 392-93, 126 S. Ct. 1837, 1840 (2006). Rather, a plaintiff seeking a permanent injunction must satisfy the traditional four-factor test before a district court may use its equitable discretion to grant such relief. Id., 547 U.S. at 391, 126 S. Ct. at 1839 (applying test in patent infringement case); see Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010) (holding that eBay applies with equal force to preliminary injunctions issued for alleged copyright infringement); Warner Bros. Entm't Inc. v. RDR Books, 575 F. Supp. 2d 513, 551 (S.D.N.Y. 2008) (applying eBay test to grant permanent injunction in copyright infringement action). Specifically, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay, 547 U.S. at 391, 126 S. Ct. at 1839.

"After eBay, . . . courts must not simply presume irreparable harm." Salinger, 607 F.3d at 82. "Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." Id. at 81. The plaintiffs contend that, if their ISMs are widely available, professors will be less likely to select their college textbooks for classroom instruction. The plaintiffs claim this would cause them "serious financial injury," which may drive them "to cease publishing one or more deserving books or journals." The plaintiffs should not be expected to suffer a decline in textbook sales and profits – an injury difficult to quantify – owing to Vergara's infringement. Hence, they have demonstrated irreparable harm.

The plaintiffs have also demonstrated that no legal remedies would compensate them adequately for their injuries. A plaintiff has no adequate remedy at law where, absent an injunction,

the defendant "is likely to continue infringing" its copyright(s). Warner Bros., 575 F. Supp. 2d at 553; see SimplexGrinnell v. Integrated Sys., 642 F. Supp. 2d 167, 196-97 (S.D.N.Y. 2009)(finding remedies at law inadequate where evidence suggested defendant would continue unauthorized use of copyright). A court may infer from a defendant's default that it is willing to, or may continue its infringement. See Basquiat v. Baghoomian, No. 90-Civ-3853, 1992 WL 125529, at *2 (S.D.N.Y. May 22, 1992); Montblanc-Simplo GMBH v, Colibri Corp., 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010). No evidence exists in the record to suggest that Vergara has or will stop copying and selling the plaintiffs' ISMs. Hence, an award of monetary damages cannot adequately compensate the plaintiffs for the harm they have suffered.

The balance of hardships weighs in the plaintiffs' favor, as the defaulting defendant has not identified any hardships for the Court to consider. Finally, it appears the public would stand to gain from the issuance of a permanent injunction. To the extent copyright law "provid[es] individuals a financial incentive to contribute to the store of knowledge, the public's interest may well be [] accounted for by the plaintiff's interest." Salinger, 607 F.3d at 82. If the plaintiffs suffer financial losses, owing to Vergara's infringement, and choose to publish fewer books, the public's store of knowledge is diminished. Accordingly, it would be an appropriate exercise of discretion to issue a permanent injunction.

**IV. Attorney's Fees and Costs**

The Copyright Act authorizes a district court to award "full costs," including reasonable attorney's fees, to a prevailing party in an infringement action. 17 U.S.C. § 505. "[A]ttorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534, 114 S. Ct. 1023, 1033 (1994). When deciding whether to exercise its discretion under Section 505, a district court "may consider such factors as (1) the frivolousness of

the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010). Vergara has failed to appear in this action to assert any defense, frivolous or otherwise. The Court finds that awarding costs and attorney's fees is warranted, in order to compensate the plaintiffs for the costs they incurred to retain counsel to initiate this litigation and secure judgment by default.

The plaintiffs seek to recover, as costs, the $350 filing fee paid to initiate this action. This is a reasonable and appropriate expense to recover. See 28 U.S.C. § 1920(1)(authorizing a district court to tax, as costs, fees of the clerk).

In addition to recovering their filing fee, the plaintiffs seek an award of $2,580 in attorney's fees. When fixing an attorney's fee award, courts in this circuit calculate the "'presumptively reasonable fee,'" which is the product of the "reasonable hourly rate" and the hours reasonably expended by counsel. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections, 522 F.3d 182, 183-84 (2d Cir. 2008). The "reasonable hourly rate" is the "rate a paying client would be willing to pay . . . ." Id. at 190 (noting "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively"). The rate is generally the prevailing rate charged in the district where the court sits. Id. at 183. However, in setting the reasonable hourly rate, the district court should consider a number of "case-specific variables," including, inter alia, the factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974). Id. at 190.[3]

---

[3] "The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of

Similarly, in calculating the reasonable number of hours expended, a court should exclude documented hours which are "excessive, redundant, or otherwise unnecessary." See Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983). To exclude these hours, a "court has discretion simply to deduct a reasonable percentage of the number of hours claimed . . . ." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (upholding 20% reduction in requested hours for "vagueness, inconsistencies, and other deficiencies in the billing records"). "In reviewing a fee application, the district court examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997).

The plaintiffs are represented by the firm Dunnegan LLC ("Dunnegan"), located in New York, New York. In support of their application for attorney's fees, the plaintiffs provided the Court with time records for Laura Scileppi ("Scileppi"), an associate at Dunnegan. According to Scileppi's records, she devoted 12.9 hours to the instant action and seeks remuneration at a rate of $200 per hour. The plaintiffs provided the Court with no other information about Dunnegan or Scileppi.

When seeking an attorney's fee award from the district court, "the burden is on the fee applicant to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 1547 n.11 (1984). Based on the Court's review of cases, it appears the hourly rate requested for Scileppi is within the rate range found reasonable, when awards for attorney's fees have been made in this district. See Harrell v. Van der Plas, No. 08 Civ. 8252, 2009 WL 3756327, at

---

the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Arbor Hill, 522 F.3d at 186-87 n.3 (citing Johnson, 488 F.2d at 717-19).

*6 n.7 (S.D.N.Y. Nov. 9, 2009) (awarding hourly rate of $400 to copyright and trademark litigation attorney with approximately 20 years' experience); Diplomatic Man, Inc. v. Brown, No. 05 Civ. 9069, 2007 WL 2827125, at *2 (S.D.N.Y. Sept. 28, 2007) (finding hourly rate of $440 for law firm partner with 23 years' experience and $315 for eighth-year associate to be "reasonable for experienced intellectual property lawyers litigating in this district"); Pearson Educ., Inc. v. Tjiptowidjojo, No. 06 Civ. 6071, 2007 WL 2872439, at *1 (S.D.N.Y. Sept. 28, 2007)(awarding $275 hourly rate to law firm partner and $150 to sixth-year associate in copyright infringement case). However, the Court cannot assess properly the reasonableness of the Scileppi's rate, owing to the lack of information provided about her qualifications, experience and customary hourly rate. For this reason, and considering this action demanded little by way of time, labor and skill, the Court finds a deduction should be made to Scileppi's rate. An hourly rate of $150 is reasonable and appropriate.

Scileppi's time records contain sparse descriptions of the services she provided, such as "call/emails," "new address for service," "call w/attorney" and "emails." These descriptions are vague in that they prevent the Court from assessing properly their value to this action. For example, on November 2, 2009, Scileppi spent 0.3 hours doing the following: "draft of cmp; emails." The Court understands this to mean Scileppi worked on a draft of the complaint in November 2009, which is curious, since the plaintiffs initiated their action in August 2009 and never filed an amended complaint. Deducting from Scileppi's time records to account for deficiencies, the Court finds that she should receive fees for nine hours of work only.

Accordingly, the Court finds an award of $1,350 in attorney's fees is appropriate in this case.

## RECOMMENDATION

For the reasons set forth above, I recommend judgment by default be entered, against

Vergara, in the amount of $32,450, representing $30,750, in statutory damages, and $1,700, in costs and attorney's fees. I recommend, further, that Vergara, her agents, servants, employees, attorneys and all those acting in concert with her be enjoined, permanently, from reproducing and/or selling any of the ISMs identified in Schedules A through D to the complaint, or any ISMs to textbooks identified in Schedules A through D.

***

The plaintiffs shall serve a copy of this Report and Recommendation upon Vergara and submit proof of service to the Clerk of Court.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl, 500 Pearl Street, Room 1030, New York, New York 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Koeltl. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 470 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300

(2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York  
      September 27, 2010

Respectfully submitted,

_/s/ Kevin Nathaniel Fox_  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE